KANSAS PACIFIC RY. CO. v. ATCHISON, TOPEKA & SANTA FE R. CO.

*(Circuit Court, D. Kansas.   January, 1881.)*

1. PUBLIC LANDS—WITHDRAWAL FROM SALE.
   The withdrawal of public lands from sale by competent authority for the purpose of appropriating them to any lawful purpose, operates to sever such lands from the public domain, and the land department is the proper authority to make the order of withdrawal.

2. PACIFIC RAILROAD ACTS—CONSTRUED.
   On July 1, 1862, the original Pacific Railroad act was passed, granting a certain portion of the public lands for the construction of railroads; and on July 2, 1864, an amendatory act was passed enlarging the original grant. The lands in controversy were not included in the original grant, but are included in the grant under the later amendatory act, under which complainant claims title. *Held,* that such lands, during the intervening period, were subject to be reserved from sale, pre-emption, or homestead settlement by the proper authority.

3. SAME—TITLE UNDER INTERVENING GRANT.
   Where complainant claims title under the amendatory act of 1864, and respondent claims title under an intervening act of congress of March 3, 1863, passed while the lands in controversy were subject to reservation from sale by the government, the title to the lands is in the respondent.

In Equity.

*J. P. Usher,* for complainant.

*Ross Burns, A. A. Hurd,* and *Geo. R. Peck,* for respondent.

McCRARY, C. J.   The lands in controversy were not granted to the complainant by the original Pacific Railroad act of 1862.   They are outside of the limits of that grant.   If complainant's title can be sustained at all, it must be under and by virtue of the amendatory act of July 2, 1864, enlarging the Pacific Railroad grant.   Under this lat-

ter act the complainant undoubtedly acquired the title, unless by the intervening grant to the state of Kansas of March 3, 1863, and the withdrawal of the lands thereunder, they were within the meaning of the statute "reserved or otherwise disposed of by the United States." These several acts occurred in chronological order as follows:

July 1, 1862.  Original grant.

March 3, 1863.  Grant to the state.

April 30, 1863.  Lands withdrawn from market by order of the commissioner of the general land-office with the approval of the secretary of the interior.

July 2, 1864.  Amendatory act passed enlarging the original grant.

The case turns upon the effect that is to be given to the act of the interior department withdrawing the lands from sale, pre-emption, or homestead entry. Did this withdrawal amount to a reservation of the lands within the meaning of the grant? If so, the lands in controversy did not pass by the grant of 1864, and the complainant has no title. In the case of *Walcott* v. *Des Moines Co.* 5 Wall. 681, the opinion was expressed that the interior department was the competent power to make an order withdrawing or reserving public land from sale, and it was held that, if this were not so, a grant of land for a specific purpose "carried along with it by necessary implication not only the power, but the duty of the land-office to reserve from sale the lands embraced in the grant." The proposition that wherever there is authority to withdraw any of the public land from market, the land department of the government is the proper authority to make the order of withdrawal, is, to my mind, too clear to require argument to enforce it. Nor can there be any doubt that the moment the grant of March 3, 1863, was made, the authority to withdraw the lands embraced therein was created.

It is also well settled that a withdrawal of public lands from sale by competent authority for the purpose of appropriating them to any lawful purpose operates to sever such lands from the public domain. *Wilcox* v. *Jackson,* 13 Pet. 498; *Leavenworth, etc., R. Co.* v. *U. S.* 92 U. S. 745; *Railroad Co.* v. *Fremont Co.* 9 Wall. 94.

Complainant, however, relies on the ruling of the supreme court in the case of *Missouri, etc., R. Co.* v. *Kansas Pac. Ry. Co.* 97 U. S. 491.

In that case the acts under which the complainant claims were construed. Mr. Justice Field, in delivering the opinion of the court construing the two acts together, said:

"When the location was made and the sections granted ascertained, the title of the plaintiff took effect by relation as of the date of the act, except as to the reservations mentioned, the act having the same operation upon the sections as if they had been specifically described in it.

"It is true that the act of 1864 enlarged the grant of 1862, but this was done, not by words of a new and an additional grant, but by a change in the words of the original act, substituting for those there used words of larger import. This mode was evidently adopted that the grant might be treated as if thus made originally; and therefore, as against the United States, the title of the plaintiff to the enlarged quantity, with the exceptions stated, must be considered as taking effect equally with the title of the less quantity as of the date of the first act."

I do not understand the supreme court to hold that the amendatory grant of 1864 passed to the grantee the title to land which congress had in the mean time granted to another, or which had in the mean time been by competent authority otherwise disposed of. It is certainly clear that during the time intervening between July 1, 1862, when the original grant was made, and July 2, 1864, when it was amended and enlarged, the United States was at liberty to dispose of any public lands outside of the limits of the original grant, and the lands in controversy were during that period public lands outside of said grant. They were, I presume, up to the time of their withdrawal under the grant to the state, lands in the market subject to pre-emption or homestead entry. If any of them had been, prior to the passage of the act of 1864, disposed of under the pre-emption or homestead laws, or patented to private parties under any law of the United States, it would, I apprehend, hardly be claimed that lands thus disposed of would have passed to the complainant. And yet this would be the logical consequence of holding that the two acts are to be construed as one act *for all purposes.*

The supreme court was careful to avoid this construction.

It is said that "when the location was made and the *sections granted ascertained,* the title of the plaintiff took effect by relation as of the date of the act, *except as to the reservations mentioned.*" There is in this language a distinct recognition of the fact that the reservations mentioned did not pass, and that an inquiry was necessary to ascertain what sections did and what did not pass. But to make the meaning still more definite and certain the supreme court add, "and therefore, *as against the United States,* the title of the plaintiff to the enlarged quantity, *with the exceptions stated,* must be considered as taking effect equally with the title to the less quantity, as of the date

of the first act." This language not only does not authorize, but it forbids the inference that as against an intervening grantee of some of the lands included within the limits of the larger grant, the title would pass under the two grants as of the date of the former.

It is only as against the United States that this construction prevails. As against other grantees claiming adversely to the United States as well as to complainant, the later act must be considered as a subsequent grant and as taking effect only from its date.

Decree for respondent.